FILED
United States Court of Appeals
Tenth Circuit

September 18, 2012

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

ISMAEL GONZALEZ-ARENAS, a/k/a
Jorge Castillo, a/k/a Ismael Gonzales
Arenas, a/k/a Jorge Castillo-Gonzalez,
a/k/a Ismael Gonsales-Arenas, a/k/a
Ismael Arenas-Gonzalez, a/k/a Ismail
Gonzalez-Arenas,

Defendant-Appellant.

No. 11-1322
(D.C. No. 1:04-CR-00282-REB-1)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **HOLMES**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and **EBEL**,
Circuit Judge.

After a bench trial, Ismael Gonzalez-Arenas was convicted on five of six

counts charged in a second superseding indictment: Count 1, possession of a firearm

by an armed career criminal, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1);

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of this
appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Count 2, maintaining a drug-involved premises, aiding and abetting, in violation of 21 U.S.C. § 856(a)(1)-(2), (b), and 18 U.S.C. § 2; Count 3, conspiracy to possess with intent to distribute more than 50 grams of crack cocaine, aiding and abetting, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 846, and 851, and 18 U.S.C. § 2; Count 4, possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i); and Count 5, unlawful re-entry subsequent to an aggravated felony conviction, in violation of 8 U.S.C. § 1326(a) and (b)(2). The district court sentenced Gonzalez-Arenas to life imprisonment plus sixty months. The life sentence was a mandatory minimum term for his conviction on Count 3.

Gonzalez-Arenas appeals his convictions and sentence. His appointed counsel, however, has moved to withdraw pursuant to *Anders v. California*, 386 U.S. 738 (1967), stating that there are no meritorious grounds to pursue an appeal. As required under *Anders*, counsel has filed a brief with the court "referring to anything in the record that might arguably support the appeal," *id.* at 744, and counsel has furnished a copy of the brief to Gonzalez-Arenas. Gonzalez-Arenas has filed several pro se responses to the *Anders* brief, and the government has declined to file a response brief. We ordered supplemental briefing on one issue not raised in the *Anders* brief or by Gonzalez-Arenas pro se, which we will discuss below. Our task in an *Anders* case is to "conduct a full examination of the record to determine whether defendant's claims are wholly frivolous." *United States v. Calderon*, 428 F.3d 928, 930 (10th Cir. 2005). If they are, we may grant counsel's motion to withdraw and

dismiss the appeal. *Id.* "Frivolous means lacking a legal basis or legal merit; not serious; not reasonably purposeful." *United States v. Lain*, 640 F.3d 1134, 1137 (10th Cir. 2011) (brackets and internal quotation marks omitted).

We start by addressing three jurisdictional issues Gonzalez-Arenas raises that are not discussed in the *Anders* brief. First, he contends that the grant of criminal jurisdiction to federal district courts found in 18 U.S.C. § 3231 violates the Quorum Clause of the United States Constitution. In relevant part, the Quorum Clause provides that "a Majority of each [congressional chamber] shall constitute a Quorum to do Business." U.S. Const. art. 1, § 5, cl. 1. Gonzalez-Arenas argues that a quorum was not present for a vote taken in the House of Representatives when § 3231 was passed into law by the Act of June 25, 1948, Pub. L. No. 80-772, 62 Stat. 683 (codified in scattered sections of 18 U.S.C.). Thus, he concludes, his convictions should be vacated because the district court lacked jurisdiction. This argument is frivolous and "foreclosed by the 'enrolled-bill rule,' under which a bill certified by the presiding officers of each chamber [of Congress]—as was the case with § 3231, *see* 94 Cong. Rec. 568 (1948)—is 'complete and unimpeachable.'" *United States v. Small*, No. 11-1614, 2012 WL 2435585, at *1 (7th Cir. June 28, 2012) (unpublished) (quoting *Marshall Field & Co. v. Clark*, 143 U.S. 649, 672 (1892)); *see also United States v. Davis*, 375 F. App'x 611, 612 (7th Cir. 2010) (substantially the same); *United States v. Farmer*, 583 F.3d 131, 151-52 (2d Cir. 2009) (same).

Gonzalez-Arenas next argues that the Constitution grants the federal judiciary the power to adjudicate civil cases but not criminal cases. For this he relies on a portion of Article III, section 2, clause 1, that provides: "The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority[.]" Gonzalez-Arenas claims that the phrase "Law and Equity," being in the conjunctive, means that the federal judiciary has jurisdiction over only cases that have both a legal and equitable component. He therefore concludes that the Constitution does not permit Congress to vest criminal subject matter jurisdiction in the federal courts because equitable cases are civil in nature, not criminal. This argument is also frivolous. Although the word "and" is ordinarily conjunctive, reading it as such in this instance would render a later provision of Article III meaningless: "The Trial of all Crimes, except in Cases of Impeachment, shall be by Jury[.]" *Id.* Clearly, the authors of the Constitution intended for federal judicial power to extend to criminal cases that arise under federal law or there would have been no reason for them to establish the right to a jury trial for "all Crimes." Hence, we conclude that the Constitution extends the judicial power to criminal cases arising under federal law, and therefore the Constitution empowers Congress to vest criminal jurisdiction by statute in "such inferior Courts as the Congress may from time to time ordain and establish," *id.*, art. III, § 1.

Third, Gonzalez-Arenas contends that the federal government can only prosecute federal crimes that occur wholly within the exclusive jurisdiction of the United States. This argument is in essence a challenge to Congress's power to pass criminal laws affecting conduct on state land. Although courts have found that Congress exceeded constitutional boundaries in enacting some criminal laws, Gonzalez-Arenas has not pointed to any cases so holding with respect to the specific federal criminal statutes he was convicted under: 18 U.S.C. § 922(g)(1) (possession of a firearm); 21 U.S.C. § 856(a)(1)-(2) (maintaining a drug-involved premises); 21 U.S.C. §§ 841(a)(1) and 846 (conspiracy to possess with intent to distribute more than 50 grams of crack cocaine); 18 U.S.C. § 924(c)(1)(A)(i) (possession of a firearm in furtherance of a drug trafficking crime); and 8 U.S.C. § 1326(a) and (b)(2) (unlawful reentry subsequent to aggravated felony conviction). This is for good reason: all of these statutes have specifically passed constitutional scrutiny regarding Congress's power to enact them. *See United States v. Dorris*, 236 F.3d 582, 584-86 (10th Cir. 2000) (18 U.S.C. § 922(g)(1) valid exercise of Commerce Clause power); *United States v. Hernandez-Guerrero*, 147 F.3d 1075, 1078 (9th Cir. 1998) (8 U.S.C. § 1326 valid exercise of "Congress's sweeping power over immigration matters"); *United States v. Puckett*, 147 F.3d 765, 769 n.4 (8th Cir. 1998) (§ 856(a)(1) valid exercise of Commerce Clause power); *United States v. Walker*, 142 F.3d 103, 111 (2d Cir. 1998) (18 U.S.C. § 924(c)(1) valid exercise of Commerce Clause power);

- 5 -

*United States v. Wacker*, 72 F.3d 1453, 1475 (10th Cir. 1995) (21 U.S.C.

§§ 841(a)(1) and 846 valid exercise of Commerce Clause power).[1]

We next turn to the six issues counsel identified in the *Anders* brief as

conceivable grounds for appeal: (1) there was insufficient evidence to support the

convictions; (2) the district court erred in denying motions to suppress evidence

seized at Gonzalez-Arenas's residence; (3) the deportation of a confidential

informant prevented Gonzalez-Arenas from mounting a defense;

(4) Gonzalez-Arenas's speedy trial rights were violated; (5) the life sentence was

substantively unreasonable; and (6) Gonzalez-Arenas received ineffective assistance

of trial counsel.

First, based on our de novo review of the record, and cognizant of our

obligation to construe the evidence in the light most favorable to the government and

---

[1]     The other statutes informing Gonzalez-Arenas's convictions are not statutes of conviction; rather, they are either enhancement, penalty, definitional, or procedural statutes. 18 U.S.C. § 924(e), which is part of the Armed Career Criminal Act of 1984, "is merely a penalty enhancement statute and does not create a new substantive federal crime." *United States v. Phelps*, 17 F.3d 1334, 1338 (10th Cir. 1994). 21 U.S.C. § 856(b) prescribes penalties for violations of § 856(a). 18 U.S.C. § 2 describes who is punishable as a principal, namely "[w]hoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission," or "[w]hoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States." 21 U.S.C. § 841(b)(1)(A) sets out penalties for violations of § 841(a) that are dependent on the drug type and quantity involved. 21 U.S.C. § 851 sets out the procedure for establishing prior convictions that increase punishment for repeat offenders. Accordingly, none of them bear on Gonzalez-Arenas's constitutional challenge to the federal government's power to prosecute him for crimes committed on state territory.

without weighing the evidence or evaluating witness credibility, *see United States v. Delgado-Uribe*, 363 F.3d 1077, 1081 (10th Cir. 2004), we conclude that there was sufficient evidence to support Gonzalez-Arenas's convictions. The record contradicts counsel's specific arguments that there was no evidence Gonzalez-Arenas possessed a firearm, maintained a crack house, or conspired with anyone. On May 28, 2004, detectives from the Denver Police Department executed a search warrant at the house Gonzalez-Arenas rented. One detective testified that he found a gun in a bedroom. Gonzalez-Arenas's ex-girlfriend testified that he traded some crack for the gun, had acquired it for protection, and kept it under the bed. Another witness testified that Gonzalez-Arenas said he was storing the gun for a friend. This is sufficient to establish constructive possession, even without fingerprint evidence, which Gonzalez-Arenas points out was lacking. *See United States v. Gambino-Zavala*, 539 F.3d 1221, 1229 (10th Cir. 2008) (constructive possession requires a showing that a "defendant had knowledge of and access to the [gun]"; fingerprint evidence is not required).

As to the violation of 21 U.S.C. § 856(a), maintaining a drug-involved premises, there was ample evidence that crack was manufactured, stored, distributed, or used at the house Gonzalez-Arenas occupied as a lessee, that he controlled the house and the drug activity, and that the manufacture or distribution of crack was one of the primary uses to which the house was put. *See United States v. Prentiss*, 206 F.3d 960, 975 (10th Cir. 2006) (setting out elements of § 856(a)(2) offense);

*United States v. Verners*, 53 F.3d 291, 295-97 (10th Cir. 1995) (discussing elements of § 856(a)(1) offense).[2]  There was also sufficient evidence that, with knowledge of the essential objectives of the conspiracy, he knowingly and voluntarily had interdependent drug-dealing activities with several other people, including his ex-girlfriend and her brother (together, the Batemans), involving more than 50 grams of crack, as required for his conspiracy conviction, *see Delgado-Uribe*, 363 F.3d at 1083 (listing elements of conspiracy).  Gonzalez-Arenas's conviction on this charge rests largely on the district court's determination that the Batemans were generally credible and more credible than Gonzalez-Arenas, who testified that the gun was not his, that he had no involvement with drugs, and that the Batemans were lying in exchange for a promise of immunity.  Credibility determinations are beyond our purview.  *See id.* at 1081.

Counsel also points out that the lead investigative detective, Daniel Rojas, testified that virtually all evidence was destroyed because of "errors within the police department."  R., Vol. 4 at 1047.  Gonzalez-Arenas claims that this shows authorities never had any evidence.  The arguments overlook that photographs of the evidence

---

[2]  Section 856(a)(1) makes it "unlawful to . . . knowingly open, lease, rent, use, or maintain any place, whether permanently or temporarily, for the purpose of manufacturing, distributing, or using any controlled substance."  Section 856(a)(2) makes it "unlawful to . . . manage or control any place, whether permanently or temporarily, either as an owner, lessee, agent, employee, occupant, or mortgagee, and knowingly and intentionally rent, lease, profit from, or make available for use, with or without compensation, the place for the purpose of unlawfully manufacturing, storing, distributing, or using a controlled substance."

were presented at trial along with testimony regarding the seizure of the evidence, which included crack cocaine, scales, the firearm, $1445 in small bills in Gonzalez-Arenas's wallet, and a bank receipt for a cash deposit of $1600, also in his wallet, dated the same day of the search. It also overlooks the testimonial evidence of Gonzalez-Arenas's drug-trafficking activities and his maintenance of a crack house.[3]

The second issue identified by counsel in the *Anders* brief is that the district court erred in denying motions to suppress evidence seized at Gonzalez-Arenas's residence. The court ruled that an affidavit sworn out by Detective Rojas in support of the search warrant, which included statements attributed to two confidential informants and a description of surveillance by Detective Rojas and other officers, established probable cause. Gonzalez-Arenas argues that the affidavit contained multiple false statements, specifically, that Detective Rojas invented the two confidential informants, fabricated a failed controlled buy by the first confidential informant, and fabricated a controlled buy of heroin by the second confidential informant. This argument is wholly speculative and therefore insufficient to overcome the presumption of validity afforded to an affidavit that supports a search warrant. *See Franks v. Delaware*, 438 U.S. 154, 171 (1978). Hence, this issue is frivolous.

---

[3] Neither counsel nor Gonzalez-Arenas takes issue with the sufficiency of the evidence regarding his unlawful reentry conviction.

Relatedly, counsel argues that the district court erred in denying a motion to dismiss the indictment because the second confidential informant was deported without giving any statement regarding the alleged heroin purchase that, in part, informed Detective Rojas's affidavit. Counsel claims the deportation violated Gonzalez-Arenas's constitutional right to compulsory and due process. But deportation alone is insufficient to establish a violation of the Compulsory Process Clause or the Due Process Clause. *United States v. Valenzuela-Bernal*, 458 U.S. 858, 872-73 (1982). To obtain dismissal of an indictment based on the departure of a potential witness, a defendant must show that "the government acted in bad faith by allowing a witness with potentially exculpatory information to depart" and that "the voluntary departure of the absent witness prejudiced him by eliminating testimonial evidence that would be both material and favorable to the defense." *United States v. Barajas-Chavez*, 358 F.3d 1263, 1267 (10th Cir. 2004) (internal quotation marks omitted). The second showing requires a defendant to provide "some plausible explanation of the assistance he would have received from the testimony of the deported witnesses." *Valenzuela*-Bernal, 458 U.S. at 871.

Gonzalez-Arenas has made no showing of bad faith. As to the second requirement, appellate counsel points out that trial counsel's explanation as to the assistance he would have received from the deported confidential informant was that he could "maybe procure [the second confidential informant's] attendance and she can tell me everything about what was really going on in this house at the time

- 10 -

instead of what the . . . witnesses who have been lined up by the government offer."

R., Vol. 4 at 526. That argument is purely speculative and, as such, does not satisfy the applicable standard. Accordingly, Gonzalez-Arenas's claim that the district court erred in denying his motion to dismiss the indictment based on the deportation of the second confidential informant is frivolous.

Next, counsel argues that Gonzalez-Arenas's Sixth Amendment right to a speedy trial was violated. In evaluating speedy trial claims, we balance four factors: "(1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant." *United States v. Gould*, 672 F.3d 930, 936 (10th Cir. 2012) (quotation omitted). Although the delay was lengthy (more than six years), most of it was primarily attributable to Gonzalez-Arenas's own conduct (firing attorneys, asking for extension of time to file motions) and his lack of competency to stand trial. Further, it does not appear he asserted his right to a speedy trial until April 2009, and any prejudice to him was largely the result of his own conduct and his mental incompetence to stand trial. On balance, we conclude that the factors weigh heavily against Gonzalez-Arenas. *See Dickey v. Florida*, 398 U.S. 30, 48 (1970) (delay caused by incompetency disentitles a defendant to speedy trial protections); *United States v. Abdush-Shakur*, 465 F.3d 458, 465 (10th Cir. 2006) ("Delays attributable to the defendant do not weigh against the government."). Thus, his speedy-trial issue is wholly frivolous.

- 11 -

We next turn to Gonzalez-Arenas's life sentence. The sentence was handed down on July 11, 2011, after the effective date of the Fair Sentencing Act of 2010 (FSA), which was August 3, 2010. In the *Anders* brief, counsel advanced a conclusory claim that the mandatory minimum life sentence was substantively unreasonable. As presented, that claim was wholly frivolous since the minimum life sentence was mandated by statute, and counsel gave no reason for concluding that the sentence was substantively unreasonable. But after counsel filed the *Anders* brief, the Supreme Court issued *Dorsey v. United States*, holding that "the Fair Sentencing Act's new, lower mandatory minimums [for crack cocaine offenses] apply to the post-Act sentencing of pre-Act offenders." 132 S. Ct. 2321, 2335 (2012). In relevant part, the FSA increased the quantity of crack cocaine, from 50 grams to 280 grams, necessary to trigger a mandatory minimum life sentence when an offender has, like Gonzalez-Arenas, two or more prior felony drug convictions. *See* 21 U.S.C. § 841(b)(1)(A)(iii).

Concerned that *Dorsey* might have some bearing on Gonzalez-Arenas's life sentence, which was imposed for his conviction for conspiracy to possess with intent to distribute more than 50 grams of crack cocaine, we obtained supplemental briefs from the parties. The parties agree that the Supreme Court's interpretation of the FSA in *Dorsey* facially applies to Gonzalez-Arenas: the conspiracy ended in 2004, well before the FSA's effective date, and Gonzalez-Arenas was sentenced after that date. However, the parties differ as to what the outcome should be.

Gonzalez-Arenas argues that we should remand for resentencing because there is insufficient evidence to support a finding in the presentence investigation report (PSR), which the district court adopted, that the conspiracy involved more than 1,600 grams of crack. The government argues that the district court applied the increased drug quantities that trigger a mandatory minimum life sentence set forth in the FSA when it adopted the drug-quantity calculation in the PSR, to which Gonzalez-Arenas made no objection.

We agree with the government that Gonzalez-Arenas did not object to the drug quantity calculation in the PSR. This failure to object is dispositive. Our cases have characterized the failure to assert a factual challenge to a PSR at sentencing in two ways; either the waiver forecloses plain error review or the factual dispute does not rise to the level of plain error. *Compare United States v. Easter*, 981 F.2d 1549, 1556 (10th Cir. 1992) (stating that "because Defendant failed to raise [a] fact-dependent issue in the court below, he has waived it on appeal, and plain error review does not apply"), *with United States v. Overholt*, 307 F.3d 1231, 1253 (10th Cir. 2002) (explaining that the "failure to raise factual challenges at sentencing prevented the probation office from reviewing any of [appellant's factual disputes] and prevented the district court from resolving them. In such circumstances, we consider the issue waived and will not find plain error."), and *United States v. Svacina*, 137 F.3d 1179, 1186-87 (10th Cir. 1998) (although "failure to object [to a PSR] generally precludes review except for plain error . . . , factual disputes not

- 13 -

brought to the attention of the court do not rise to the level of plain error"). *See generally United States v. Hamilton*, 587 F.3d 1199, 1216 n.9 (10th Cir. 2009) (discussing whether plain error review is "inappropriate altogether or a conclusion of plain error is untenable" when an alleged error involves the resolution of fact-dependent issues not presented to the district court). But under either characterization, Gonzalez-Arenas's argument that there was insufficient evidence to support a finding that 1,600 grams were involved in the conspiracy is wholly frivolous because he cannot prevail on appeal; his waiver either forecloses review altogether or the factual dispute does not rise to the level of plain error.

Finally, counsel states that Gonzalez-Arenas believes he received ineffective assistance of trial counsel, including that trial counsel conspired with the prosecutor and district judge, left out facts at trial, and advised him that it was not in his best interests to testify. Such claims generally should be raised in collateral proceedings, not on direct appeal, "[e]ven if the record appears to need no further development." *United States v. Galloway*, 56 F.3d 1239, 1240 (10th Cir. 1995). Thus, when raised on direct appeal, such claims "are presumptively dismissable, and virtually all will be dismissed." *Id.* Nonetheless, we will consider an ineffective assistance claim on direct review "only in the very rare instance that [the claim] is fully developed in the record." *United States v. Boigegrain*, 155 F.3d 1181, 1186 (10th Cir. 1998). Based on our review of the record, however, this is not such an occasion. Thus, although

we do not opine on the merits of Gonzalez-Arenas's ineffective-assistance claim, advancing it on direct appeal is frivolous.

For the foregoing reasons, we agree with counsel that there are no nonfrivolous grounds for appeal.  We therefore GRANT counsel's motion to withdraw and DISMISS the appeal.

Entered for the Court


David M. Ebel
Circuit Judge