FILED
United States Court of Appeals
Tenth Circuit

September 6, 2017

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

SUSIE JANE PATTON,

    Defendant - Appellant.

No. 16-6359
(D.C. No. 5:16-CR-00115-C-1)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, Chief Judge, **BALDOCK**, and **BRISCOE**, Circuit Judges.[**]
_____

The sole issue in this appeal is whether Defendant Susie Jane Patton's above-Guidelines sentence is substantively reasonable.

Our story starts in July 2015 when Defendant, in a different criminal case, pleaded guilty to wire fraud in violation of 18 U.S.C. § 1343 after she embezzled tens of thousands of dollars from her previous employer, Silverado Reconditioning Services, Inc. ("Silverado Reconditioning"). And at her sentencing six months later

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. _See_ Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument.

in January 2016, Defendant begged the district court for leniency. She explained that she had embezzled the funds to fuel her gambling addiction and was now regularly participating in Gamblers Anonymous. She further described how she had divulged her crime to her new employer, a family-owned company named D&D Design and Manufacturing, Inc. ("D&D Design"), and how the owners of D&D Design had still embraced her with open arms and allowed her to continue working for them. In fact, those same owners—at least one of whom came to support Defendant during her sentencing—had asked her to become an authorized signer on D&D Design's business bank account, but Defendant told the district court she had refused because

> I knew if I ever went back to my old ways, that the accessibility was too much, and I knew that. And I wasn't going to allow there to be any improprieties shown while I worked for these good people that worked so hard . . . to build a business.

She concluded by avowing that if the district court gave her "an opportunity to show the Court and everyone around [her] how much [she had] changed," there would "never be a question" that she had "learned" from the error of her ways.

After hearing a response from the government, which cautioned the district court that Defendant was a "very accomplished con artist" who had been "engaged in ongoing criminal conduct" since 1999, the district court informed Defendant that it was "not going to assume" that "everything" Defendant had declared was a total fabrication. For that reason, the district court mercifully sentenced Defendant to 21 months' imprisonment, which was a sentence at the bottom of the applicable Guidelines range, and ordered her to make the necessary restitution payment to

Silverado Reconditioning. Further, the district court generously gave Defendant thirty days "to take care of whatever needs to be taken care of" before she was required to voluntarily report to prison in late February. Until that time, however, the district court stressed that "all conditions of [Defendant's] pretrial release [would] continue to apply."

Sadly, everyone involved soon came to see that the government was correct: Defendant was merely a wolf in sheep's clothing. In June 2016, several months after her sentencing for wire fraud in connection with her employment at Silverado Reconditioning and while Defendant was serving her term of imprisonment in connection with that crime, a grand jury charged Defendant with fifteen counts of wire fraud after it came to light that she had embezzled over a hundred thousand dollars from D&D Design.

Defendant's methods were intricate. She would first create false invoices using the names of actual vendors of D&D Design and then input these invoices into the company's accounting system. The accounting system would accordingly print a check for the payment of the invoices, and Defendant would present these checks to the owners of D&D Design to sign. Finally, after obtaining a signature, Defendant would deposit the checks into one of several bank accounts that she controlled. Defendant engaged in this pattern with forty-nine different checks—yes, *forty-nine*— and embezzled a combined total of $107,452.08 from D&D Design.

But even more concerning than *how* Defendant defrauded D&D Design is *when* she defrauded it. She initially obtained twenty-nine of the forty-nine checks

3

before pleading guilty to wire fraud in the Silverado Reconditioning case. She then, however, proceeded to obtain the remaining twenty checks *after* pleading guilty and while on conditions of release in that case. And of those twenty she obtained while on release, all but one were created before her sentencing in January 2016. In fact, a mere two days before the sentencing, Defendant embezzled another $3,833.02 check from D&D Design. The obvious conclusion one must necessarily draw, therefore, is that as Defendant was begging the district court for leniency based on her purported reformation—and, mind you, as one of the owners of D&D Design sat in the gallery of the same courtroom as a show of his belief in and support of her—she was all the while fully aware of nearly fifty instances where she had secretly embezzled loads of money from D&D Design and, even more, had done so almost twenty times while on conditions of release. And lest the reader think that the sentencing proceeding itself was Defendant's "Aha!" moment wherein she fully realized just how serious the ramifications of her illegal activities were, it is worth noting that she embezzled another $2,871.71 check *after* sentencing—that is, during the thirty days the district court gave her to tidy matters up before she had to report to prison and while her conditions of release continued to apply.

Defendant eventually pleaded guilty to two counts of the indictment in exchange for dismissal of the remaining thirteen counts: (1) Count 7, which regarded a check she fraudulently obtained before her guilty plea in the Silverado Reconditioning case, and (2) Count 14, which regarded a check she fraudulently obtained after her guilty plea and while on conditions of pretrial release in the

4

Silverado Reconditioning case. As previously mentioned, both of these counts constituted wire fraud in violation of 18 U.S.C. § 1343. In addition, Count 14 implicated 18 U.S.C. § 3147, which is "strictly a sentencing enhancement provision" for offenses committed while under conditions of release. *United States v. Mowery*, No. 16-2247, 2017 WL 2297390, at *3 (10th Cir. May 25, 2017) (unpublished) (quoting *United States v. Browning*, 61 F.3d 752, 756 (10th Cir. 1995)); *see also id.* ("[Section] 3147 doesn't set forth 'a separate offense of conviction.'" (quoting *Browning*, 61 F.3d at 756)). Section 3147 mandates that "[a] person convicted of an offense committed while released . . . shall be sentenced, *in addition to* the sentence prescribed for the [underlying] offense to . . . a term of imprisonment of not more than ten years if the offense is a felony." 18 U.S.C. § 3147 (emphasis added).[1]

---

[1] The full text of section 3147 reads:

> A person convicted of an offense committed while released under this chapter shall be sentenced, in addition to the sentence prescribed for the offense to—
> (1) a term of imprisonment of not more than ten years if the offense is a felony; or
> (2) a term of imprisonment of not more than one year if the offense is a misdemeanor.
> A term of imprisonment imposed under this section shall be consecutive to any other sentence of imprisonment.

18 U.S.C. § 3147. Note that this section requires a conviction—not just the commission—of an offense, alleviating the potential constitutional issues raised in *United States v. Haymond. See United States v. Haymond*, __ F.3d __, 2017 WL 3752465 (10th Cir. Aug. 31, 2017) (holding that 18 U.S.C. § 3583(k), which mandates revocation of supervised release and imprisonment of no less than five years for the *commission*—not the conviction—of certain crimes by defendants required to register under the Sex Offender Registration and Notification Act, violates the Fifth and Sixth Amendments).

Further, that additional term of imprisonment "shall be consecutive to any other sentence of imprisonment." *Id.*

Section 2B1.1 of the 2015 edition of the United States Sentencing Guidelines set the base offense level for Defendant's sentence at 7. *See* U.S.S.G. § 2B1.1(a)(1). Further, several upward adjustments served to increase her total offense level: (1) an 8-level increase because the total amount of loss exceeded $95,000, *see* U.S.S.G. § 2B1.1(b)(1)(E); (2) a 2-level increase because her embezzlement scheme involved "sophisticated means," *see* U.S.S.G. § 2B1.1(b)(10)(C); (3) a 2-level increase because she abused the position of trust she held at D&D Design, *see* U.S.S.G. § 3B1.3; and finally (4) a 3-level increase because the sentencing enhancement under § 3147 for being convicted of an offense committed while under conditions of release applied, *see* U.S.S.G. § 3C1.3. Thus, after factoring in a 3-level decrease for Defendant's acceptance of responsibility, Defendant's total offense level was 19. Coupled with her rather extensive category IV criminal history, a total offense level of 19 corresponded to a Guidelines range of 46–57 months' imprisonment.

Further, Application Note 1 to U.S.S.G. § 3C1.3 specified how the district court should go about applying the mandatory sentencing enhancement under 18 U.S.C. § 3147 that must run consecutive to the underlying sentence of imprisonment. According to Note 1,

> the court, in order to comply with the statute, should divide the sentence on the judgment form between the sentence attributable to the underlying offense and the sentence attributable to the enhancement. The court will have to ensure that the "total punishment" (i.e., the sentence for the offense committed while on release plus the statutory

6

> sentencing enhancement under 18 U.S.C. § 3147) is in accord with the guideline range for the offense committed while on release, including . . . the [3-level upward] adjustment provided by the enhancement in this section.

U.S.S.G. § 3C1.3, comment. (n.1). Applying that directive to Defendant's case, Note 1 thus instructed the district court to divvy up Defendant's Guidelines sentence of 46–57 months' imprisonment to reflect that that range *already* accounted for the enhanced, consecutive sentence under § 3147 via a 3-level upward adjustment. *See id.* So, for example, if the district court were to have decided that a "total punishment" of 57 months' imprisonment—a sentence at the high end of the Guidelines range—was appropriate, Note 1 would have required it to attribute, say, the first 51 months' imprisonment to the underlying offense and the last 6 months' imprisonment to the enhanced sentence under § 3147. *See id.* Such a methodology "enables the [district] court to determine and implement a combined 'total punishment' consistent with the overall structure of the [G]uidelines, while at the same time complying with the statutory requirement [under § 3147]." U.S.S.G. § 3C1.3, comment. (backg'd).

Needless to say, when the time came for sentencing in the D&D Design case, the district court was not pleased. Given Defendant's despicable actions, it indicated early on that it was considering imposing a sentence higher than the Guidelines range of 46–57 months' imprisonment. Initially, it felt it should do so via a departure from the Guidelines because of its belief that Note 1 of U.S.S.G. § 3C1.3 "completely gutted" § 3147 of its power—that is, improperly limited the amount of punishment a

7

court could apply under that statute. But after granting a continuance of sentencing to give the parties a few additional weeks to address this inclination, the district court distanced itself from its previous, mistaken belief that Note 1 incorrectly applied § 3147 as a general matter, *cf., e.g.*, *United States v. McCary*, 58 F.3d 521, 523–24 (10th Cir. 1995) (noting that the district court "correctly followed" the identically written precursor to Note 1 of § 3C1.3); *Mowery*, 2017 WL 2297390, at *2–3 (noting, albeit in an unpublished opinion, that Note 1 of § 3C1.3 generally requires the district court to render a total punishment that falls within the Guidelines range for the offense committed while on release), and instead indicated that the 3-level enhancement under U.S.S.G. § 3C1.3 was simply insufficient given Defendant's conduct in this specific case. It also changed course and decided to grant an upward variance instead:

> I find that there are circumstances present in this case of a kind and to a degree not taken into account by the Sentencing Commission warranting a departure. Those circumstances are that this is not a case where one offense was undertaken while the defendant was on pretrial release. It was, in fact, 20 different checks, 20 different thefts, one days before and one days after sentencing. I don't think this is what the Sentencing Commission had in mind when it provided basically a zero- to six-month punishment for committing an offense while on pretrial release. That is what the guidelines permit, a [3]-level addition [pursuant to U.S.S.G. § 3C1.3] to be served consecutively.
>
> And I find a departure is warranted in this case. However, I am going to, instead, vary upward, because I think it's cleaner, simpler, and I do so based on the number of times that [Defendant] stole while she was on supervised release, the number of times she stole all together.

The district court then further discussed why it felt an upward variance was warranted under 18 U.S.C. § 3553(a):

> The nature and circumstances of this offense are far beyond the normal offense in that the victims treated and responded to [Defendant] as

8

though she were their daughter. She so actively misled, misrepresented her own self in order to have access to this money, it takes it outside of the normal range of nature and circumstances of this offense.

Even more so, however, clearly prison has not at this point been a deterrent for [Defendant]. She has received less than two-year sentences three different times in federal court, starting with probation and then two revocations of that probation sentence, and then the sentence that I imposed last January [in the Silverado Reconditioning case]. None of these terms have had any effect on her, apparently, as she has continued in the same course of conduct. So I believe a significantly longer sentence is necessary to afford a deterrent to her criminal conduct, and certainly to protect the public.

*See* 18 U.S.C. § 3553(a)(1), (a)(2)(B), (a)(2)(C). In its Statement of Reasons, the district court additionally made clear that it varied upward "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." *See* 18 U.S.C. § 3553(a)(2)(A).

Ultimately, the district court felt that an above-Guidelines sentence of 82 months' imprisonment was most appropriate:

> I have struggled with . . . how to reasonably explain the variance I'm going to impose. And this is what I have done: I have removed—and I want to make it clear, I am not changing any ruling on the guidelines. They have been correctly calculated in the presentence report. But in trying to reach a fair upward variance, I removed the three levels given for the commission of—well, for Count 14, commission of an offense while on pretrial release, from the guideline calculation, which results in a 33- to 41-month guideline, and I have decided to impose that twice, once for Count 7 and once for Count 14. And the top of that range is 82 months, and that's where I come out is an 82-month sentence, 25 of which is attributed to Count 14 and 57 of which—that is the original top of the guideline range on Count 7.
>
> For these reasons, I sentence you to the custody of the Bureau of Prisons for a term of 82 months, this consists of 57 months on Count 7, 25 months on Count 14, both to be served consecutively to each other . . . .
>
> ….

9

I want to reiterate for clarity, if clarity can be reached based on this sentence I have imposed, I am not departing upward; I am varying upward. I am sentencing within guidelines on Count 7 and varying on Count 14.

The district also mandated, in accordance with U.S.S.G. § 5G1.3(a), that Defendant's 82-month sentence run consecutively to her 21-month sentence "currently being served" in the Silverado Reconditioning case. Finally, the district court ordered Defendant to make full restitution in the amount of $107,452.08 to the owners of D&D Design and imposed three years' supervised release on Defendant after her prison term ended.

Defendant now appeals her sentence. We first note that pursuant to her plea agreement, she has waived her right to challenge the amount of restitution the district court required her to pay. She has also waived her right to appeal the manner in which the district court determined her sentence. Defendant has, however, preserved her right to appeal her above-Guidelines sentence for its substantive reasonableness—that is, "whether the length of [her] sentence is reasonable given all the circumstances of the case in light of the factors set forth in 18 U.S.C. § 3553(a)." *United States v. Craig*, 808 F.3d 1249, 1261 (10th Cir. 2015) (quoting *United States v. Conlan*, 500 F.3d 1167, 1169 (10th Cir. 2007)). As a result, we need not concern ourselves with the district court's precise methodology in attributing 57 months' imprisonment to Count 7 and 25 months' imprisonment to Count 14—i.e., the manner in which the district court determined her sentence. Instead, we must answer only one simple question: Is Defendant's total above-Guidelines sentence of 82-months' imprisonment too long?

We review a sentence for substantive reasonableness using the familiar abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 51 (2007). Under that standard,

10

we will reverse "only if the sentence imposed was 'arbitrary, capricious, whimsical, or manifestly unreasonable.'" *United States v. DeRusse*, 859 F.3d 1232, 1236 (10th Cir. 2017) (quoting *United States v. Gantt*, 679 F.3d 1240, 1249 (10th Cir. 2012)). Further, we may not presume that Defendant's above-Guidelines sentence is automatically unreasonable. *Gall*, 552 U.S. at 51. Instead, we "must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance," and "[t]he fact that [we] might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." *Id.*

We have little trouble concluding that the district court did not abuse its discretion in imposing a sentence 25 months over the applicable Guidelines range. For one thing, as the district court made abundantly clear, Defendant didn't commit just a single offense while on conditions of release in the Silverado Reconditioning case. Instead, she embezzled money *twenty* different times after pleading guilty in that matter (nineteen times before sentencing and one time after sentencing). The district court was entirely justified in determining that this recurring illegal conduct while on release, which most readily implicates the need for the sentence imposed to reflect the seriousness of the offense, *see* 18 U.S.C. § 3553(a)(2)(A), was not adequately accounted for by the 3-level upward adjustment under § 3C1.3 alone and thus demanded an upward variance.

Further, the district court did not abuse its discretion when it concluded that an upward variance was needed to deter Defendant from future illegal conduct and to

11

protect the public from her crimes. *See* 18 U.S.C. § 3553(a)(2)(B), (C). As evidenced by Defendant's significant criminal history and her illegal conduct while on release, Defendant simply cannot stop defrauding others, embezzling from others, and committing other financial crimes. As the government labeled her in the Silverado Reconditioning case, she is a "very accomplished con artist," and Defendant's past actions up to and including those in the current D&D Design matter give us no reason to believe she will (or is even willing to) change her deceptive and harmful ways.

But we believe the nature and circumstances of Defendant's offense are the most disgraceful part of this case. *See* 18 U.S.C. § 3553(a)(1). All the while knowing that she had utilized complex and sophisticated methods to defraud D&D Design *nearly fifty different times* by that point, Defendant stood up in front of the district court and the owners of D&D Design and asserted that she had changed her ways for the better. These same owners—people who came to love Defendant "as though she were their daughter"—truly believed she had changed, and Defendant was perfectly content letting them maintain that belief. Defendant even actively held herself out as a redeemed sinner who "wasn't going to allow there to be any improprieties shown while I worked for these good people that worked so hard . . . to build a business." And then, just several days after that sentencing concluded, she embezzled another couple thousand dollars from the very people who had so adamantly defended her. Such blatant deception was and still is suffocating. We therefore believe the district court not only did not abuse its discretion in varying upward to an 82-month sentence but also came to the correct conclusion in doing so.

12

Defendant's best (yet ultimately unpersuasive) counterargument is that the district court was mistaken in its belief that U.S.S.G. § 3C1.3 did not adequately account under 18 U.S.C. § 3147 for the number of times she embezzled money from D&D Design while on conditions of release. To be sure, Defendant notes that her Guidelines range of 46–57 months' imprisonment already accounted for her conduct while on supervised release via the 3-level upward adjustment under § 3C1.3, and without this 3-level upward adjustment her Guidelines range would have been 33–41 months' imprisonment. In other words, the 3-level upward adjustment by itself added thirteen months to the bottom of her Guidelines range and sixteen months to the top. Contrary to the district court, Defendant claims this *did* adequately account for the multiple offenses she committed while on conditions of release.

And if any ambiguity remains, Defendant further argues that the 8-level increase in her sentence based on the total amount of loss exceeding $95,000 *also* accounted for her conduct while on release. Indeed, she notes that she incurred $44,638.74 of the $107,452.08 she ultimately embezzled while on conditions of release, which means that she embezzled only $62,813.34 before she was put under those conditions. A $62,813.31 loss amount, in turn, would have resulted in only a 6-level increase. *See* U.S.S.G. § 2B1.1(b)(1)(D) (increasing by 6 levels any loss amount over $40,000 but under $95,000). Thus, Defendant's conduct while on release—embezzling an additional $44,638.74—transformed what would have been a 6-level increase into an 8-level increase. While this 2-level difference may seem fairly inconsequential to the untrained eye, Defendant notes the rather large effect it

13

had: if the 6-level increase had been used, her Guidelines range would have been 37–46 months' imprisonment, which was nine months lower at the bottom and eleven months lower at the top than her eventual Guidelines range of 46–57 months' imprisonment. Again, Defendant contends that this increase, especially when viewed in conjunction with the 3-level increase under § 3C1.3, more-than-adequately accounted for her conduct while under conditions of release.

While these arguments have a certain amount of superficial appeal, they do not establish how the district court's decision to vary upward by 25 months was arbitrary, capricious, whimsical, or manifestly unreasonable. All they show is that the district court could have reasonably come to the conclusion that the Guidelines did adequately account for Defendant's conduct, which is insufficient to justify a reversal. *Gall*, 552 U.S. at 51. After giving "due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance," *id.*, we still do not believe the district court—the tribunal with expertise in the case— abused its discretion in deciding to grant an upward variance. To be sure, we have affirmed much larger variances from Guidelines sentences in more controversial matters on the basis that the district court is in a "superior position to find facts and judge their import under § 3553(a) in the individual case." *DeRusse*, 859 F.3d at 1237 (quoting *Gall*, 552 U.S. at 51); *see, e.g.*, *id.* at 1233–41 (affirming a time-served sentence of 70 days' imprisonment, a massive downward variance from the Guidelines range of 108–135 months' imprisonment, in a kidnapping case where the

14

perpetrator abducted his ex-girlfriend at gunpoint and attempted to imprison her at a bed-and-breakfast).

Defendant proffers several other arguments based on a series of statistics and studies suggesting that (1) her sentence should have taken into more consideration some form of mental health treatment for her gambling addiction, (2) longer prison sentences aren't particularly effective in deterring future criminal conduct, and (3) her long prison sentence would be needlessly expensive. We can easily dispose of these arguments for the same reason we noted previously: they do not account for the district court's intimate familiarity with the specific details of her case. We still see no abuse of discretion.

As a final point, we believe it is worth mentioning that while we are sympathetic to the fact that a severe gambling addiction may have fueled Defendant's crimes, any such addiction does not by itself outweigh the other sentencing considerations that the district court took into account in this case. For her own sake, we fervently hope that Defendant can find a way to treat any addiction she may have so as to stem the tide of any future crimes she may be tempted to commit. That said, her alleged overwhelming urge to gamble does not override the harm she has caused others—particularly the owners of D&D Design—by her past actions.

AFFIRMED.

Entered for the Court


Bobby R. Baldock
Circuit Judge